UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case Nos. 3:19-cr-00414 |
| | 3:19-cr-00418 |
| Plaintiff | |
| v. | MEMORANDUM OPINION |
| | AND ORDER |
| Andre Lamar Wright, et al, | |
| Defendants. | |

## I. INTRODUCTION

Defendants Andre Lamar Wright and Kyle Jackson seek to suppress evidence obtained during and following a traffic stop of a vehicle Wright was driving. (Case No. 3:19-cr-00414, Doc. No. 9; Case No. 3:19-cr-00418, Doc. No. 13). On November 15, 2019, I held a joint suppression hearing at which the parties offered evidence and oral argument in support of their respective positions. After hearing the arguments of counsel and reviewing the evidence submitted, I conclude the automobile stop and search was permissible under the Fourth Amendment and deny both Wright's and Jackson's motions to suppress.

## II. BACKGROUND

On June 14, 2019, Toledo Police Department officers conducted a traffic stop of a vehicle driven by Andre Lamar Wright a.k.a. Andre Lamar Jackson. The stop was the culmination of an investigation into Wright by the Department's Gun Crime Intelligence Task Force. (Doc. No. 14 at

9-11)[1]. As part of that investigation, Detective Gary Bunting researched Wright's license status and discovered Wright had a suspended operator's license. (*Id.* at 11). Bunting testified he last checked Wright's license status sometime during the first or second week of June. (*Id.* at 21). Bunting communicated this information to Sergeant Jim Haney, and the two formulated a plan to try and find Wright driving so they could "get him stopped," and "see who his associates were at the time." (*Id.* at 10-11).[2]

On June 14, pursuant to their plan, Bunting and Haney each drove separate undercover vehicles around an area they believed Wright frequently drove. (*Id.* at 11, 30). While driving around, Bunting eventually saw Wright in his rear-view mirror, when Wright pulled up behind his vehicle in a black Dodge Journey. (*Id.* at 12). Bunting had never seen Wright in-person before this incident, but claims he was familiar with Wright's appearance because he had previously seen Wright on social media and in BMV photographs. (Doc. No. 14 at 23).

Using the radio, Bunting informed Haney that he had located Wright, and that Wright had entered the turning lane and would soon be heading in a different direction. (*Id.* at 14). Because Bunting and Haney were both in undercover vehicles, Bunting asked dispatch whether there were any marked units in the area on patrol that could assist with the stop. (*Id.* at 44). Upon hearing this, Detective Darnell Peters, who was also in an unmarked vehicle, offered to assist with maintaining a visual on the vehicle Wright was driving until marked units could arrive to pull it over. (*Id.* at 44-45). Peters followed the vehicle to a nearby car wash, keeping the other officers involved in the operation updated on the vehicle's location along the way.

---

[1] Unless otherwise indicated, all citations are to the record in Case No. 3:19-cr-00414.

[2] In briefing, the government conceded the traffic stop was part of a larger investigation into firearm offenses. (Doc. No. 15 at 6).

Haney set up in a parking lot south of the car wash and identified the vehicle in which Wright was traveling. (*Id.* at 31). Haney testified he was approximately 50 yards away, looking at the passenger side of the vehicle when he saw Wright walk around the front of the vehicle, get into the driver's seat, and drive away. (*Id.* at 36). Haney claims he was familiar with Wright's appearance through social media posts and booking photos, as well as prior in-person interactions with Wright. (*Id.* at 32, 36-37).

Officer Michael Johnson stopped the vehicle that Wright was driving shortly after it left the car wash. (*Id.* at 63). During the stop, Johnson, with the assistance of Officer Eric Macek, removed the vehicle's occupants one by one. (*Id.* at 64-65). Upon removing the front seat passenger, Kyle Jackson, from the vehicle, Macek saw a black pistol on the front passenger seat where Jackson had been seated. (*Id.* at 51). Wright and Jackson were both arrested and subsequently each indicted for being a felon in possession of a firearm.

### III.  DISCUSSION

Wright and Jackson argue the officers lacked probable cause to stop the vehicle and lacked the reasonable suspicion of ongoing criminal activity necessary to support a *Terry* stop. I conclude the government has presented sufficient evidence to support both probable cause and reasonable suspicion findings and deny Wright and Jackson's motions to suppress.

I begin by addressing whether Kyle Jackson has standing to contest the seizure of the evidence against him. The government, relying on *Rakas v. Illinois*, 439 U.S. 128 (1978), argues Jackson lacks standing because he has no reasonable expectation of privacy while in the vehicle of another.[3] But even if this is so, Jackson has standing here because he is contesting the seizure of his

---

[3] The vehicle was not registered to Wright either, but instead to an individual who officers' believe is Wright's sister. (Doc. No. 14 at 80-81, 85).

person. *See Brendlin v. California*, 551 U.S. 249 (2007) (holding that when a police officer makes a traffic stop, the passenger of the car is seized within the meaning of the Fourth Amendment).

Fundamentally, "[i]t is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)).

An officer has a sufficient basis to stop a vehicle if the officer knows the driver has a suspended operator's license. *United States v. Sandridge*, 385 F.3d 1032 (6th Cir. 2004) (finding probable cause where an officer checked the status of a suspect's license three weeks prior to the traffic stop and found it was suspended). Bunting testified to checking Wright's license as recently as one to two weeks prior to the traffic stop at issue. Further, Bunting checked Wright's license status multiple times leading up to that check, giving him an even stronger basis for believing the license was still suspended. Thus, Bunting had probable cause to believe that if Wright was operating a motor vehicle, then a traffic violation was being committed.

Given this, the next issue is whether Bunting had probable cause to believe Wright was operating the motor vehicle that Bunting requested other officers stop. Wright argues the government did not have probable cause, or a reasonable suspicion of ongoing criminal activity, because neither Bunting nor Haney could have identified him as the driver of the vehicle prior to the traffic stop. According to Wright, the identifications made by Bunting and Haney were pretext for stopping and searching the vehicle in the hopes that Wright would be the driver.

In support of his assertion that it would have been impossible for Bunting to identify him as the driver, Wright relies on the following: the front driver-seat visor was in the down position; Wright had a full beard on the day in question; and Bunting had never seen Wright in person before. But Bunting testified to having seen photos of Wright before, and Bunting was specifically looking

4

for Wright in the area at the time he made the identification. While the position of the visor might have made the identification more difficult, it does not make it impossible.

Moreover, Haney was able to identify Wright when he observed him at the car wash. While Haney was fifty yards away, he testified conditions were clear that day and he had no trouble identifying Wright as the individual who walked around the front of the vehicle and got into the driver's seat. Haney was familiar with Wright's appearance from previous interactions with Wright as well as from photographs of Wright that Haney examined prior to the stop. I conclude the testimony Bunting and Haney offered concerning how they identified Wright as the driver was credible and established a reasonable basis for the traffic stop.

Although neither Bunting nor Haney actually stopped the vehicle Wright was driving, the "collective knowledge rule" permits "a responding officer [to execute] a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). Thus, Bunting's and Haney's reports that Wright was operating a vehicle with a suspended license provided a basis for Johnson and Macek to lawfully stop the vehicle.

While the government concedes Bunting and Haney were specifically looking for Wright driving a vehicle, that concession is not enough to support Wright's claim that the officers would have lied about identifying him as pretext to stop the vehicle. The officers' motivation does not render the search unlawful under the Fourth Amendment. *See United States v. Wellman*, 185 F.3d 651, 655 (6th Cir. 1999) ("[I]t is irrelevant what else the officer intended to investigate at the time of the stop.").

Finally, Wright and Jackson fail to establish that the officers' actions in seizing the firearm violated the Fourth Amendment. When officers make a lawful traffic stop, they are permitted, in the interest of safety, to ask the occupants to exit the vehicle, even in the absence of unusual or

5

suspicious behavior. *Pennsylvania v. Mimms*, 434 U.S. 106, 109-10 (1977) (finding no constitutional violation in officer's instruction that the driver step out of the car); *see also Maryland v. Wilson*, 519 U.S. 408, 413-15 (1997) (extending this rule to ordering passengers out of the vehicle).

Once Jackson was removed from the vehicle, Officer Macek saw the firearm in plain sight on the front passenger seat. Thus, Macek conducted a valid plain view search because the incriminating nature[4] of the item was "immediately apparent" to Macek, and Macek was lawfully located in a position from which he could plainly see the firearm. *See United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir. 1996) (citing *Horton v. California*, 496 U.S. 128 (1990)).

## IV. CONCLUSION

Accordingly, Wright's and Jackson's motions to suppress, (Case No. 3:19-cr-00414, Doc. No. 9; Case No. 3:19-cr-00418, Doc. No. 13), are denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[4] Ohio Rev. Code § 2923.16 prohibits knowingly transporting a loaded firearm in a vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle.